IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | | |
|---|---|---|
| ANTHONY GLEN CLARKE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| VS. | ) | No. 20-1049-STA-jay |
| | ) | |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

---

ORDER ADOPTING REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE
AND
DENYING VARIOUS MOTIONS
AND
CERTIFYING APPEAL NOT TAKEN IN GOOD FAITH

---

On November 5, 2021, Magistrate Judge Jon A. York filed his Report and Recommendation recommending that the Court affirm the decision of the Commissioner of Social Security and find that Plaintiff had a fair hearing and full administrative consideration in accordance with applicable statutes and regulations, and, thus, substantial evidence supports the Commissioner's decision that Plaintiff's benefits were appropriately offset. (ECF No. 57.) Plaintiff has filed timely objections to the Report and Recommendation (ECF No. 60), and the Commissioner has responded to Plaintiff's objections. (ECF No. 62.)

Neither party has objected to the background of this matter as set out by the Magistrate Judge. Therefore, the Court adopts the Magistrate Judge's recitation of the events leading up to this lawsuit.

Plaintiff seeks judicial review of only one issue - the ALJ's final decision that the agency appropriately offset his retroactive Title II benefits because he had also already received Title XVI supplemental security income during that same period. Plaintiff applied for supplemental security income in January 1996 and was found disabled at the initial stage two months later in March 1996. From April 1996 to April 1997, Plaintiff was paid a total of $5,067.36 in supplemental security income. Plaintiff was incarcerated in March 1997 however, stopping his supplemental security income payments.

In April 2002 Plaintiff applied for supplemental security income again and was found to meet the medical requirements for disability payments. Pursuant to an August 29, 2002 letter received by Plaintiff, his supplemental security income payments would begin July 2002. Plaintiff was paid a total of $113,050.65 in supplemental security income from January 1996 through May 2016.

In an August 16, 2016 letter, Plaintiff was informed that the agency had determined that he had been entitled to disability insurance benefits beginning June 1996. The retroactive Title II disability insurance benefits totaled $77,554.00, according to an itemized breakdown of the Title II payments. Pursuant to agency policy, the retroactive Title II disability insurance benefits were offset by $55,805.27 because Plaintiff had received Title XVI supplemental security income during the overlapping periods, and so the agency sent Plaintiff a lump sum check of $21,748.73. *See* 42 U.S.C. § 1320a-6; 20 C.F.R. § 404.408b.

Plaintiff contested the offset and requested reconsideration on March 14, 2017. In its June 4, 2018 notice of reconsideration, the agency confirmed that Plaintiff was entitled only to $21,748.73 in retroactive Title II benefits, as the full amount of $77,554.00 had been properly offset by $55,805.27.

On June 18, 2018, Plaintiff requested a hearing by an administrative law judge ("ALJ"). Plaintiff was not represented at the March 22, 2019 hearing; he signed a waiver of representation prior to the hearing and confirmed on the record that he wanted to proceed without representation. Plaintiff had no objections to any of the exhibits in the file. The ALJ confirmed at the hearing that the only issue under consideration was the offset of the $77,554.00 retroactive Title II benefits by $55,805.27 (the SSI offset amount).

In her decision dated May 30, 2019, the ALJ found that the offset amount was calculated correctly and that the agency properly reduced the $77,554.00 in retroactive disability insurance benefits by the $55,805.27, leaving a balance of $21,748.73, which the agency had paid to Plaintiff in August 2016. On June 16, 2019, Plaintiff requested review of the ALJ's decision. On January 8, 2020, the Appeals Council denied Plaintiff's request for review, and thus the ALJ's May 2019 decision became the Commissioner's "final decision" subject to judicial review under 42 U.S.C. § 405(g). This action followed.

2

(Rep. & Rec. pp. 1-3, ECF No. 57 (record citations omitted)).

If a party objects within the allotted time to a Report and Recommendation, as did Plaintiff, the Court "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b) (1); *see also* Fed. R. Civ. P. 72(b). Parties must file specific objections. "[T]he filing of vague, general, or conclusory objections does not meet the requirement of specific objections and is tantamount to a complete failure to object." *Cole v. Yukins*, 2001 WL 303507 *1 (6th Cir. March 19, 2001) (citing *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995)). Because a "general objection to the entirety of the magistrate's report has the same effects as would a failure to object," *Howard v. Sec'y of Health and Human Services*, 932 F.2d 505, 509 (6th Cir. 1991), to the extent that Plaintiff has made "vague, general, or conclusory objections," those objections are waived, and the Court will consider only the portions of the Report and Recommendation to which Plaintiff has made specific objections.[1]

Plaintiff contends that it was not appropriate for the Agency to deduct any amount from his retroactive Title II benefits; however, he does not explain why it was not appropriate for the Agency to do so. As correctly stated by the Magistrate Judge, Section 1127 of the Act, 42 U.S.C. § 1320a-6, provides for the offset of retroactive Title II benefits if supplemental security income was paid during that same time period. 42 U.S.C. § 1320a-6; *see also* 20 C.F.R. § 404.408b. That is, if the claimant is entitled to both Title II disability insurance benefits and supplemental security income and the Title II disability benefits have not been paid, the amount of the retroactive Title II disability insurance benefits "shall be reduced" by an amount equal to the

---

[1] Most, if not all, of Plaintiff's objections are "vague, general, or conclusory."

3

amount of the supplemental security income that would not have been paid if he had received the Title II benefits in the months they were due. *Id.* Such a reduction occurred in this case.

Plaintiff complains that the Commissioner did not follow the proper procedure in notifying him of the delay between his payments under the two benefits provisions, Title II and Title XVI. But, as the Magistrate Judge correctly explained, regardless of when Title II or Title XVI payments are made, they must be offset.

Plaintiff claims that the Commissioner's offset finding was the result of "egregious conduct," but the Magistrate Judge found no evidence of wrongdoing in the Commissioner's application of the statute. The regulations required Plaintiff's disability benefits to be offset, and it was appropriate that the Commissioner did so in this case. Plaintiff does not point to any authority that would have permitted the Commissioner to vary from that result.

Plaintiff takes issue with the finding of the Magistrate Judge that he was incarcerated in the late nineties. *See* 20 C.F.R. § 404.468 (discussing nonpayment of benefits to prisoners). According to Plaintiff, he was living in an apartment in Colorado at that time and was not incarcerated. Although Plaintiff has attached to his objections what he contends is a rent receipt (ECF No. 60-1), the receipt was not part of the administrative record and, moreover, is not authenticated and, thus, cannot be considered by this Court. Even if the Court did consider the receipt, at most it shows that Plaintiff paid rent for an apartment for one month in March 1997.

Plaintiff's argument that the administrative record was tainted by the lack of an evidentiary hearing is not clear. Plaintiff previously moved to strike the administrative record (ECF No. 30). For the reasons set forth in the order denying that motion (ECF No. 50), the Court finds that Plaintiff's present argument is without merit.

Under 42 U.S.C. § 405(g), a claimant may obtain judicial review of any final decision made by the Commissioner after a hearing to which he was a party. The Court's review is limited to determining whether there is substantial evidence to support the Commissioner's decision, 42 U.S.C. § 405(g), and whether the correct legal standards were applied. *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389 (1971)). It is "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Comm'r of Soc. Sec.*, 105 F.3d 244, 245 (6th Cir. 1996) (citing *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). When substantial evidence supports the Commissioner's determination, it is conclusive, even if substantial evidence also supports the opposite conclusion. *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004); *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001).

In the present case, Plaintiff has presented no relevant facts or arguments that show the Report and Recommendation should not be adopted. Because Magistrate Judge York evaluated the offset decision under the proper legal standards and addressed all of Plaintiff's arguments, Plaintiff's objections are **OVERRULED**, and the Report and Recommendation finding that the decision of the Commissioner was supported by substantial evidence is **ADOPTED** in its entirety. The decision of the Commissioner is hereby **AFFIRMED**, and judgment will be entered in favor of the Commissioner and against Plaintiff.

Because of this determination, the pending motions (ECF Nos. 47, 51, 54) are **DENIED** as moot. Plaintiff's motion for relief from judgment (ECF No. 63) is **DENIED** on the merits because no judgment had been entered at the time of the filing of the motion.[2]

---

[2] Plaintiff appears to merely reiterate his objections to the Report and Recommendation in his

<u>Appellate Issues</u>

The Court must also consider whether Plaintiff should be allowed to appeal this decision *in forma pauperis*, should he seek to do so. Pursuant to the Federal Rules of Appellate Procedure, a non-prisoner desiring to proceed on appeal *in forma pauperis* must obtain pauper status under Fed. R. App. P. 24(a). *See Callihan v. Schneider*, 178 F.3d 800, 803-04 (6th Cir. 1999). Rule 24(a) provides that if a party seeks pauper status on appeal, he must first file a motion in the district court, along with a supporting affidavit. Fed. R. App. P. 24(a)(1). However, Rule 24(a) also provides that if the district court certifies that an appeal would not be taken in good faith, or otherwise denies leave to appeal *in forma pauperis*, the party must file his motion to proceed *in forma pauperis* in the Court of Appeals. Fed. R. App. P. 24(a)(4)-(5).

The good faith standard is an objective one. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). The test for whether an appeal is taken in good faith is whether the litigant seeks appellate review of any issue that is not frivolous. *Id.* It would be inconsistent for a district court to determine that Plaintiff's objections to the Report and Recommendation are meritless but the action has sufficient merit to support an appeal *in forma pauperis*. *See Williams v. Kullman*, 722 F.2d 1048, 1050 n. 1 (2d Cir. 1983). The same considerations that lead the Court to adopt the Report and Recommendation of the Magistrate Judge also compel the conclusion that an appeal would not be taken in good faith.

It is **CERTIFIED**, pursuant to Fed. R. App. P. 24(a), that any appeal in this matter by Plaintiff is not taken in good faith. Leave to proceed on appeal *in forma pauperis* is, therefore, **DENIED**. Accordingly, if Plaintiff files a notice of appeal, he must also pay the full appellate

motion for relief from judgment.

filing fee or file a motion to proceed *in forma pauperis* and supporting affidavit in the Sixth Circuit Court of Appeals within thirty (30) days.[3]

**IT IS SO ORDERED.**

s/ S. Thomas Anderson
S. THOMAS ANDERSON
CHIEF UNITED STATES DISTRICT JUDGE

Date:  February 17, 2022

---

[3]  Pursuant to Fed. R. App. P. 3(a), any notice of appeal should be filed in this Court.  A motion to appeal *in forma pauperis* then should be filed directly in the United States Court of Appeals for the Sixth Circuit.  Unless he is specifically instructed to do so, Plaintiff should not send to this Court copies of documents intended for filing in the Sixth Circuit.